Philip M. Hess, Judge *690 Introduction
Dennis L. Presson and Theresa Melton (collectively "Appellants"), appeal the judgment of the Circuit Court of St. Francois County granting Bridget A. Presson's ("Respondent") motion to dismiss their petition. Appellants are the children of Warner Lee Presson ("Decedent"), and Respondent was Decedent's wife at the time of his death. Appellants argue two points on appeal: 1) the trial court erred in finding that Appellants' claims were compulsory counterclaims that should have been raised in prior litigation; and 2) the trial court erred in finding Appellants' claims were barred by § 473.360.[1] Finding no error, we affirm.
Factual Background
In September 2007, Decedent married Respondent. At the time of the marriage, Decedent was the owner of multiple real estate properties (the "Property"). In December 2007, Decedent conveyed the Property to himself and Respondent as tenants by the entirety via a general warranty deed ("Deed I").[2]
In April 2010, Respondent attempted to convey the Property back to Decedent as the sole legal owner via a general warranty deed ("Deed II") waiving her marital, dower, and homestead rights in the Property.
In April 2013, Decedent attempted to convey the Property to Appellants as joint tenants via a general warranty deed ("Deed III"). Decedent died a few months later.
Respondent, individually and as personal representative of Decedent's estate, filed a petition for discovery of assets against Appellants ("Case I"). Respondent then filed a motion for summary judgment, arguing that Deeds II and III were nullities,[3] and therefore she was the sole owner of the Property. Appellants filed no response to Respondent's motion for summary judgment. Instead, Appellants communicated to the probate court that summary judgment should be granted in favor of Respondent.
On June 24, 2016, the probate court entered its final order and judgment, declaring that Respondent was the sole owner of the Property, and that Deeds II and III were nullities.
After the judgment became final, Appellants filed a petition ("Case II") claiming that from April 2013 until June 2016, they performed services necessary to maintain the Property, including paying the real estate taxes and utility bills (the "Services"). Appellants asserted that Respondent had been unjustly enriched because she refused to compensate Appellants for their Services.
Respondent motioned to dismiss Appellants' petition. Following a hearing, the trial court granted Respondent's motion to dismiss, because Appellants' claims in their *691 petition were compulsory counterclaims under Rule 55.32(a)[4] that should have been filed in Case I. This appeal follows.
Standard of Review
We review a trial court's order granting a motion to dismiss de novo. Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667, 669 (Mo. banc 2007). We assume the factual allegations in the petition are true and do not try to weigh their credibility or persuasiveness. Rychnovsky v. Cole, 119 S.W.3d 204, 208 (Mo. App. W.D. 2003).[5]
Discussion
Appellants raise two points of error on appeal: 1) the trial court erred in determining that Appellants' claims in its petition were compulsory counterclaims, and 2) the trial court erred in determining that Appellants' claims were barred by § 473.360. However, we need address only Appellants' first point.
Missouri Supreme Court Rule 55.32(a), which governs compulsory counterclaims, states:
A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ....
The purposes of the Rule 55.32(a) are to discourage separate litigation covering the same subject matter and to require adjudication of such claims in the same action. Evergreen Nat. Corp. v. Killian Const. Co. , 876 S.W.2d 633, 635 (Mo. App. W.D. 1994). A party's failure to plead a compulsory counterclaim bars the party from having the claim heard. Rice v. Taylor-Morley-Simon, Inc. , 842 S.W.2d 926, 929 (Mo. App. E.D. 1992).
In their briefs, Appellants do not dispute their claims in Case II arise out of the same transaction that was the subject matter of Case I. We note the word "transaction" as it appears in Rule 55.32(a) is to be applied in the broadest sense. Wamsganz v. Washington Cnty. Mercantile Bank, 783 S.W.2d 435, 437 (Mo. App. E.D. 1989). Whether claims arise from the same transaction depends "not so much upon the immediacy of the connection, as upon logical relationship." Myers v. Clayco State Bank , 687 S.W.2d 256, 260 (Mo. App. W.D. 1985).
Here, both Case I and II involved a dispute between the same parties over the same real property. Ownership of the Property constituted the foundation of the claims in Case I and II. Accordingly, we hold that Appellants' claims in Case II arise from the same transaction that was the subject matter of Respondent's claims in Case I. See Harris v. Nola , 537 S.W.2d 636, 640-41 (Mo. App. 1976) (holding that the word "transaction" as used in Rule 55.32(a) should be broadly construed to include all of the facts and circumstances which constitute the foundation of a claim.).
However, Appellants assert that until the grant of summary judgment in Case I, they were unaware they did not own the Property, and so were unaware that they had sustained damages related to their Services. Therefore, they argue, their claim had not "matured" for the purposes *692 of Rule 55.32(a) when their responsive pleadings were due in Case I. Respondent argues that Appellants claims were mature by the time their responsive pleadings were due in Case I because Appellants knew Respondent was seeking to establish sole ownership of the Property and knew they had expended money on their Services.
An implicit requisite to the compulsory counterclaim rule is the claim to be asserted as a counterclaim must be "matured" at the time of serving the pleading in the previous case. Knight v. M.H. Siegfried Real Est., Inc. , 647 S.W.2d 811, 813 (Mo. App. W.D. 1982). A counterclaim is matured when the damage resulting therefrom is sustained and capable of ascertainment. Woodruff v. McMillan, 752 S.W.2d 493, 496 (Mo. App. W.D. 1988). "Ascertainment" refers to the fact of damage rather than to the precise amount. Beasley v. Mironuck , 877 S.W.2d 653, 656 (Mo. App. E.D. 1994). Damage is sustained and capable of ascertainment whenever it can be discovered or made known. Wamsganz , 783 S.W.2d at 437. "In all events, a claim accrues ... when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.' " Myers, 687 S.W.2d at 263 (emphasis added).
Appellants assert that Carson v. Dixon Cemetery supports their argument that their unjust enrichment claims were not mature until judgment was entered in Case I. 357 S.W.3d 288 (Mo. App. S.D. 2012). In Carson , the appellant interred her husband in a burial lot in Dixon Cemetery. Another family later claimed ownership of that same lot. Id. at 290. The family sued the appellant in 2004, arguing they were the rightful owners of the burial lot. Id. Judgment was granted in the family's favor in 2007. Id. In 2010, the appellant sued Dixon Cemetery, claiming the cemetery had committed fraudulent misrepresentation, negligent misrepresentation, and negligence per se. Id. The cemetery motioned for summary judgment, arguing the appellant's petition should be dismissed because her claims violated the five-year statute of limitations.[6] Id. The cemetery argued the appellant should have been aware there were possible issues with her ownership of the property when the family filed their lawsuit against her over five years prior. The appellant argued she could not ascertain she was damaged by the cemetery's fraud until after the court entered its judgment in 2007, and therefore her claims were within the statute of limitations. Id. at 291. The trial court granted the cemetery's motion for summary judgment, and the appellant filed an appeal. Id.
On appeal, the Southern District held that until the trial court's judgment against the appellant in 2007, her claims had not accrued and the statute of limitations had not run. Id. at 292. The Court held that until judgment was entered in 2007, whether the appellant had been damaged by the cemetery was speculative. Id. The Court explained that while the appellant knew there were ownership issues with the disputed burial lot prior to the judgment in 2007, until then she believed she rightfully owned the burial lot where her husband was interred. Id.
*693 Carson is distinguishable from the present case for several reasons. First, Carson did not involve the interpretation or application of Rule 55.32(a). Unlike here, the appellant in Carson sued a party in the second case not involved in the first case, and the Court never determined whether the claims in each case arose from the same transaction. Moreover, Appellants here consented to Respondent's motion for summary judgment declaring her the owner of the Property in Case I,[7] whereas in Carson the appellant made no such concession.
The Southern District case, Adamson v. Innovative Real Estate , 284 S.W.3d 721 (Mo. App. S.D. 2009), is more applicable here, as it involved determining whether a claim matured for the purposes of Rule 55.32(a). In Adamson , a husband and wife (the "Landowners") sued a neighbor seeking the removal of a barrier the neighbor had placed on a driveway running across the neighbor's property that the Landowners had an easement to use ("Adamson I "). Id. at 724-26. The court entered a judgment for the Landowners. Id. However, the neighbor filed a separate action while the first case was pending ("Adamson II "), arguing that the Landowners' easement to the driveway had been extinguished due to a conveyance. Id. The court entered judgment for the neighbor, extinguishing the Landowners' easement. After both judgments were entered, the Landowners retained a surveyor to perform a boundary survey. Id. The boundary survey placed the disputed driveway within the boundary line of Landowners' property. Id.
Based on the survey's results, the Landowners then sued the neighbor ("Adamson III ") seeking, inter alia, a judgment quieting title to the portion of real estate containing the driveway. Id. The neighbor motioned for summary judgment, arguing the Landowners' claims in Adamson III should have been raised in the previous cases and were barred by Rule 55.32(a). Id. The Landowners contended their claims were not barred because they had no notice of their claims in Adamson III while the prior cases were pending. Id. The trial court found the Landowners' claims were barred both by Rule 55.32(a) and collateral estoppel. Id.
On appeal, the Southern District affirmed the trial court's determination that the Landowners' claims in Adamson III met the elements of a compulsory counterclaim. The Court then addressed whether the Landowners' claims had matured at the time of Adamson I or II. Id. at 731. The Landowners argued their claims had not matured, since they could not have been aware there was an issue with their property's boundary lines in Adamson I and II because they had not yet completed the boundary survey. Id. The Court disagreed, holding that since the property was under the Landowner's control prior to Adamson I and II , "they had the ability to realize their damages since that time." Id. The Court held it was "within [the Landowners'] power to determine that there was a problem and prosecute the suit to a successful judgment [prior to commencement of Adamson I and II ]." Id. The Court held that it was "the ability to ascertain the damages and not the actual ascertainment thereof" which is the relevant point from which a court should determine that a claim had matured. Id. (emphasis added). The Court explained that because the damages allegedly inflicted upon the Landowners' were capable of being ascertained *694 prior to the commencement of Adamson I and II, the claim had fully matured and was barred under Rule 55.32(a). Id.
Here, we hold that Appellants' present claims were mature when their responsive pleadings were due in Case I. Just as the Landowners in Adamson could have surveyed the disputed property, Appellants could have examined the public records relating to the Property and determined they were not the owners. Id. ; see also Kueneke v. Jeggle, 658 S.W.2d 516, 517 (Mo. App. E.D. 1983) (holding "[d]amage is sustained and capable of ascertainment whenever it is such that it can be discovered or made known.")(emphasis added). Further, Appellants had notice Respondent was challenging ownership of the Property when she filed her petition in Case I. See Myers , 687 S.W.2d at 263 (holding a party's claim is ascertainable when party "had some notice they had suffered ... a legal wrong which ultimately might result in harm to them") (emphasis added). Like Adamson, whether Appellants were unaware they did not own the Property until the grant of summary judgment in Case I is not dispositive to the present appeal,[8] as they could ascertain their damages when their responsive pleadings were due in Case I.
The case Port v. Maple Tree Investments also supports the proposition that Appellants' claims here were mature and barred by Rule 55.32(a). 900 S.W.2d 3, 4 (Mo. App. W.D. 1995). In Port , the respondent filed for judicial foreclosure on real estate owned by the appellant. Id. at 4. The trial court determined the respondent had no lien upon this real estate, and rendered judgment for the appellant. Id. After the proceeding concluded, the appellant sued the respondent for slander of its title to the real estate. Id. The damages asserted by the appellant included the expense of maintaining the real estate and costs associated with the appellant's inability to sell the real estate. Id. at 5. The trial court dismissed the petition because the claims should have been asserted as counterclaims in the first suit. Id. at 4.
On appeal to the Western District, the appellant argued their slander of title claim did not mature until the judgment was entered in the first case. Id. at 4-5. The Court rejected this argument, holding that the damages asserted by the appellant could have been ascertained at the time of filing the respondent's earlier lawsuit, and therefore were mature and should have been raised as a counterclaim in the first suit. Id. at 5.
The arguments made by Appellants here and the appellant in Port are substantially the same-that their claims relating to the maintenance of disputed real property were not mature until the court entered judgment determining the legal status of disputed real property. Appellants, like the appellant in Port , did not need to wait until judgment was entered in Case I to file their present claims. Like in Port , Appellants could ascertain their damages when Respondent filed suit in Case I. Therefore, Appellants were required to file their present claims as counterclaims in Case I, and the trial court did not err in determining Appellants are barred by Rule 55.32(a) from asserting them in a later independent lawsuit.
Because the trial court properly determined that Rule 55.32(a) bars Appellants' claims, we need not address Appellants' second point arguing the trial court erred *695 in determining that Appellants' claims were barred by § 473.360.
Conclusion
The judgment of the trial court is affirmed.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

All references to statutes are to RSMo 2016, and all references to rules are to Missouri Court Rules 2017, unless otherwise specified.

Deeds I, II, and III were recorded in the Recorder of Deeds Office in St. Louis County.

Respondent argued that Deed II was a nullity because the Property was held as tenants by the entirety and an individual spouse may not convey that spouse's interest to another individual or individuals.

The petition, answer, and all subsequent proceedings in discovery of assets cases are governed by the Missouri Rules of Civil Procedure. Section 473.340.

Both parties state in their briefs that our standard of review should be pursuant to Rule 73.01. However, Rule 73.01 applies only to cases tried without a jury or with an advisory jury, and therefore is inapplicable here.

Section 516.120(5) provides that "[a]n action for relief on the ground of fraud ..." shall be filed "[w]ithin five years." Section 516.100 states that that for the purposes of section 516.120, "the cause of action shall not be deemed to accrue when the wrong is done ... but when the damage resulting therefrom is sustained and is capable of ascertainment...."

In the probate court's judgment in Case I, it stated that "[t]he Court is advised that [Appellants' attorney] consents to entry of the judgment granting [Respondent's] Motion for Summary Judgment."

However, Appellants' assertion on appeal that they believed they were the rightful owners of the Property until entry of judgment in Case I is belied by the fact that Appellants consented to summary judgment.