

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

DANNY L. DANNENHAUER, AND THE
DANNY L. DANNENHAUER FAMILY
TRUST, BY AND THROUGH BRENDA
D. GUNLOCK, TRUSTEE,

    Appellants,

vs.

PHILIP P. BRISCOE, PERSONAL
REPRESENTATIVE OF ESTATE OF
JOHN W. BRISCOE, BRISCOE AND
BRANNON, AND WASINGER
PARHAM, L.C.,

    Respondents.

No. ED111979

Appeal from the Circuit Court of
Knox County
Cause No. 20LE-CV00238-01

Honorable Terry A. Tschannen

Filed: July 23, 2024

John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

### OPINION

This appeal arises from a legal malpractice case brought by Danny Dannenhauer and the Dannenhauer Family Trust against John Briscoe[1] and his law firm, Briscoe and Brannon (Briscoe) and against the Wasinger Parham law firm. Dannenhauer and the Trust claimed that Briscoe was negligent in his representation of Dannenhauer in connection with a real estate transaction among Dannenhauer, V.T. and C.T., the owners of a 330-acre farm, in which V.T.,

---

[1] John Briscoe passed away during this appeal and this Court allowed substitution by the personal representative of his estate, Philip Briscoe.

individually and as attorney-in-fact of her husband C.T., deeded their interest in the farm to Dannenhauer. Against Wasinger Parham, the law firm that represented Dannenhauer in subsequent litigation regarding the transaction, Dannenhauer claimed that if the statute of limitations barred his claim against Briscoe, then Wasinger Parham was negligent in failing to timely notify Dannenhauer of his potential malpractice claim against Briscoe.

The integrity of that real estate transaction was drawn into question in July 2014 when one of V.T.'s granddaughters sued Dannenhauer to set it aside on the basis that V.T. had no authority under C.T.'s power of attorney to make such a transfer on C.T.'s behalf and because Dannenhauer had engaged in undue influence over V.T. At that point, according to Dannenhauer, Briscoe did not express any concern about the lawsuit to Dannenhauer and referred Dannenhauer to a colleague, Neil Maune of the Wasinger Parham law firm, to defend Dannenhauer in that case. After a trial and then a retrial of Granddaughter's suit, the court agreed with Granddaughter's claims and set aside the farm transfer. The first judgment was issued on July 31, 2017, and the second after the retrial on June 13, 2019. This Court affirmed the second judgment on May 19, 2020.

On December 17, 2021, Dannenhauer and the Trust then filed this legal malpractice suit. The trial court then entered summary judgment for Briscoe upon its holding that the five-year statute of limitations had expired because Dannenhauer's legal malpractice cause of action accrued on July 29, 2014 when Granddaughter served Dannenhauer with her petition. Thus, the court rejected Dannenhauer's claim that the cause of action did not accrue in 2014 but instead accrued on July 31, 2017 when the court entered its initial judgment in Granddaughter's favor setting aside the deed.

The case against Wasinger Parham then proceeded to trial and resulted in a verdict in the amount of $750,000 on Dannenhauer's claim that attorney Maune was negligent in failing to tell Dannenhauer that he may have had a legal malpractice case against Briscoe that was triggered when Granddaughter served Dannehauer with the lawsuit on July 29, 2014.

Nevertheless, the trial court then set aside the verdict by granting Wasinger Parham's JNOV motion based on its finding that when the statute of limitations expired in July 2019, Wasinger Parham no longer had a duty to Dannenhauer because at that time Wasinger Parham no longer represented Dannenhauer.

Dannenhauer brings five points on appeal. Because we find Point V dispositive, we need not address Points I - IV.[2] In Point V, Dannenhauer claims the trial court erred in granting summary judgment because the statute of limitations did not begin to run on July 29, 2014 since a reasonably prudent layperson, upon receipt of the commencement of Granddaughter's lawsuit, would not have been put on notice that Briscoe had committed malpractice resulting in damages to Dannenhauer. We agree and reverse the trial court's summary judgment in Briscoe's favor. As a result, we affirm the grant of JNOV in Wasinger Parham's favor because that verdict was contingent on the correctness of the trial court's summary judgment decision we have now

---

[2] In Point I, Dannenhauer claims the trial court erred in granting Wasinger Parham's JNOV motion because its JNOV motion did not include the same bases specified in its motion for directed verdict. Point II claims there was substantial evidence that Wasinger Parham's failure to inform Dannenhauer about a potential legal malpractice claim against Briscoe caused or contributed to cause him damages. In Point III, Dannenhauer claims the trial court erred in granting Wasinger Parham's motion for new trial due to instructional error because Dannenhauer claims that Instruction No. 5 was proper. In Point IV, Dannenhauer claims the trial court erred in denying the Trust's motion for new trial because Instruction No. 7 misled the jury in that it asked the jury to unnecessarily determine the existence of an attorney-client relationship between the Trust and Wasinger Parham.

3

reversed. Finally, we remand the case for an adjudication of Dannenhauer's and the Trust's claims against Briscoe for legal malpractice.

## Background

In 1995, Dannenhauer began ranching cattle on C.T.'s 330-acre farm in Ewing, Missouri. After Dannenhauer told C.T. he was interested in buying or leasing the farm, they agreed to a $9,000 per month lease. Over the years, as C.T.'s health diminished, Dannenhauer discussed the future of the farm with V.T., C.T.'s wife and attorney-in-fact. Dannenhauer believed that he had an agreement with C.T. and V.T. whereby he would continue to pay them rent pursuant to the lease until their deaths, and then he would inherit the farm from them. Thus, in 2011, V.T. suggested that Dannenhauer contact a lawyer to formalize their verbal agreement about the farm. Dannenhauer contacted attorney John Briscoe and Briscoe represented Dannenhauer, V.T. and C.T. for purposes of the farm transfer. On January 19, 2012, Dannenhauer, V.T., and Briscoe met to iron out the details of their agreement. The next day, Briscoe recorded in Lewis County a general warranty deed executed by V.T. on her own behalf and as C.T.'s attorney-in-fact which deeded the farm to Dannenhauer while reserving a life estate for herself and her husband C.T.

Dannenhauer claimed that Briscoe committed several errors during the representation: First, that Briscoe failed to have Dannenhauer, V.T., and C.T. (by his attorney-in-fact V.T.) execute written conflict waivers since Briscoe was representing all three parties in the matter. Second, that Briscoe did not read the language in C.T.'s power-of-attorney before the January 19, 2012 meeting because that language purportedly did *not* give V.T., as C.T.'s attorney-in-fact, the authority to gift the property on C.T.'s behalf to Dannenhauer. Third, that although Briscoe told Dannenhauer that his obligation was to continue paying rent to C.T. and V.T. until their deaths, Briscoe did not include this obligation in the deed or in any other instrument. Finally,

4

that Briscoe did not advise the parties that a contract of sale was the appropriate transaction to effectuate the farm's transfer because such transaction *was* authorized by the power of attorney.

In August 2012, C.T. died and V.T. granted her own power-of-attorney to one of her granddaughters. On July 24, 2014, after V.T. was no longer competent, Granddaughter filed suit against Dannenhauer seeking to set aside the January 19, 2012 general warranty deed because V.T. had no authority under C.T.'s power-of-attorney to gift to Dannenhauer C.T.'s interest in the farm. Granddaughter also claimed Dannenhauer unduly influenced V.T. to execute that deed.

Briscoe referred Dannenhauer to his colleague Neil Maune at the Wasinger Parham law firm to defend Dannenhauer in the suit by Granddaughter. Dannenhauer claimed that at that time Briscoe expressed confidence that Dannenhauer could successfully defend the suit. After a bench trial, the court voided the farm transfer upon its findings that the deed was a gift, that C.T.'s power-of-attorney did not authorize V.T. to gift his interest, and that Dannenhauer unduly influenced V.T. in that connection. The trial court set aside this judgment, however, upon learning that the farm had been transferred by Dannenhauer to his family trust and therefore the judgment did not have all the necessary parties.

Dannenhauer and the Trust hired new counsel for the 2019 retrial in which the trial court rendered essentially the same judgment as in the first trial. This Court affirmed the judgment after which V.T.'s granddaughters sold the farm for over $1.5 million.

On November 19, 2020, Dannenhauer and the Trust filed this legal malpractice suit against Briscoe and Wasinger Parham. As stated, the trial court granted Briscoe summary judgment on statute of limitations grounds and then post-trial granted Wasinger Parham's JNOV motion setting aside the $750,000 judgment in Dannenhauer's favor. This appeal follows.

5

**Standard of Review**

Summary judgment is appropriate when the movant establishes there are no genuine issues of material fact and are entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993); Rule 74.04(c). A genuine issue of material fact exists when there is competent evidence of two plausible, but contradictory, accounts of essential facts. *Armoneit v. Ezell*, 59 S.W.3d 628, 631 (Mo. App. E.D. 2001). Thus, a defendant is entitled to summary judgment when he shows facts that negate any one of the necessary elements of the plaintiff's claim. *Blackwell Motors, Inc. v. Manheim Servs. Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017).

We review an appeal challenging the grant of a motion for summary judgment *de novo*. *Day Advertising, Inc. v. Hasty*, 606 S.W.3d 122, 129 (Mo. App. W.D. 2020). Thus, we do not defer to the trial court's order granting summary judgment "because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). "Rather, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment." *Id.* We view the record in the light most favorable to the nonmoving party and afford that party the benefit of all inferences which may be reasonably drawn from the record. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D. 2007) (citing *ITT Commercial Finance Corp.*, 854 S.W.2d at 376)). Moreover, summary judgment is an extreme and drastic remedy, and appellate courts should remain cautious in affirming such judgments. *Boone Cnty. v. Cnty Emps' Ret. Fund*, 26 S.W.3d 257, 260 (Mo. App. W.D. 2000).

**Discussion**

In their dispositive point on appeal, Dannenhauer and the Trust claim the trial court erred in granting Briscoe's motion for summary judgment on the basis that Dannenhauer and the Trust's negligence claims were untimely. We agree with Dannenhauer and the Trust that the trial court erroneously found that Dannenhauer's claim against Briscoe accrued when he was served with Granddaughter's lawsuit on July 29, 2014 because such event under the circumstances was not sufficient to place a reasonably prudent person on notice of a claim against Briscoe for legal malpractice. Therefore, we reverse the summary judgment.[3]

Section 516.120, Missouri's five-year statute of limitations, applies to legal malpractice actions. *Wilson v. Lodwick*, 96 S.W.3d 879, 882 (Mo. App. W.D. 2002). The limitations period starts to run when the cause of action accrues. *Id.* "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment …." Section 516.100. "Damage is sustained and capable of ascertainment when a plaintiff could discover damage despite his remaining ignorant of the extent of damage." *Wilson*, 96 S.W.3d at 883. The word "ascertain" has always been read as referring to the fact of damage rather than the precise amount of damage. *Duvall v. Yungwirth*, 613 S.W.3d 71, 77 (Mo. App. W.D. 2020).

When a cause of action has accrued presents an objective test. *McCullen v. O'Grady*, 670 S.W.3d 94, 101 (Mo. App. E.D. 2023). Thus, the statute of limitations issue can be decided by the court as a matter of law when relevant facts are uncontested. *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 585 (Mo. banc 2006). In general, "a claim for legal

---

[3] This opinion is limited to the statute of limitations question only and is silent as to the merits of the claimed malpractice on the part of the underlying defendants.

malpractice accrues when a reasonable person would have been put on notice that an injury and substantial damages resulting from the alleged negligence may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* And whether damages are "capable of ascertainment" depends on whether "the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Id.* At 582 (internal citation omitted). Moreover, a client has no obligation to check the action or inaction of his attorney unless the facts suggest his attorney's errors are known or available to the client. *McCullen*, 670 S.W.3d at 101 (internal citation omitted).

Based on the foregoing, we find that under these circumstances a reasonably prudent person served with Granddaughter's lawsuit would not be put on notice that the lawsuit represented the accrual of ascertainable damages as the result of his attorney's malpractice and there is no other evidence here that suggests Dannenhauer reasonably suspected that Briscoe was negligent and that his negligence triggered the lawsuit. In *McCullen*, this Court held that a client's legal malpractice action accrued only after the trial court granted summary judgment in favor of the insurer in an underlying equitable garnishment action. *Id.* at 100. The defendant-lawyers had argued that the client was put on notice of their potential negligence much earlier, either when the insurance company filed its reservation-of-rights letter, when the client entered into a settlement agreement, when the client took out a litigation loan, or at some point during the settlement negotiations. *Id.* at 101. This Court disagreed and held, under the objective person standard, that the client was not put on notice, and there were no other facts or circumstances which suggested any errors on the part of the attorneys that a reasonable layperson would know or recognize as actionable malpractice, until the trial court granted summary judgment in favor of the insurer. *Id.* at 102.

8

Similar to *McCullen*, where there were no facts which suggested the client's lawyers were negligent until the trial court issued an adverse ruling, there are likewise no facts here that would suggest to an objective layperson that as of the July 2014 commencement of Granddaughter's lawsuit, Briscoe had committed legal malpractice. Moreover, Maune testified that Dannenhauer did not express any concerns to him about how the deed was drafted or of Briscoe's representation at all. And Dannenhauer recalled that Briscoe told him he should be able to win the deed case.

Further, a fair reading of Granddaughter's July 2014 petition, from the perspective of an objectively reasonable lay person, does not necessarily point to Briscoe as the negligent cause of the lawsuit. For instance, the lawsuit's allegations contained rather complex legal principles such as constructive trusts, undue influence, and contractual consideration. One of the allegations is that "[Dannenhauer] caused [V.T.] to execute a Warranty Deed in his favor purportedly conveying the farm to [Dannenhauer]" which could suggest to a reasonable layperson such as Dannenhauer that it was his actions, not his attorney's, that were at least in part arguably the cause of the lawsuit. We are unconvinced that a reasonably prudent layperson should be deemed to be on notice that his or her lawyer committed malpractice and that that malpractice caused a lawsuit challenging the proper execution of a deed the lawyer handled when one of the claims has nothing to do with the lawyer. The petition merely establishes a *potential* that the deed was defective in some way.

We also find that damages were not capable of ascertainment in 2014 when Dannenhauer was served with the lawsuit because at that point he had not yet suffered *any* damages. It was a lawsuit, not a judgment. "Damage is sustained and capable of ascertainment whenever it is such that it can be discovered or made known." *Kueneke v. Jeggle*, 658 S.W.2d 516, 517 (Mo. App.

9

E.D. 1983); *see Cain v. Hershewe*, 760 S.W.2d 146, 149 (Mo. App. S.D. 1988) (client did not have damages from the alleged malpractice because the underlying lawsuit was still pending in federal court and the client could still prevail.)[4]  Not only did Dannenhauer not know the extent of the alleged damage caused by Briscoe, but he did not know if there were any damages *at all*.

In short, we conclude under these circumstances that the 2017 *judgment* on Granddaughter's lawsuit voiding the deed was the earliest time that Dannenhauer's cause of action may have accrued and a viable argument exists that accrual did not occur until the retrial of the case was done and dusted in 2019.  Our holding finds support in the caselaw.  *Murray v. Fleischaker*, 949 S.W.2d 203, 206 (Mo. App. S.D. 1997); *Kueneke*, 658 S.W.2d at 517; *Fischer v. Browne*, 586 S.W.2d 733, 737 (Mo. App. W.D. 1979).  Thus, Dannenhauer's November 19, 2020 legal malpractice action against Briscoe, filed within five years of the 2017 judgment, was timely.

**Conclusion**

For the reasons set forth above, we reverse and remand the trial court's summary judgment with instructions to adjudicate Dannenhauer's and the Trust's claims against Briscoe on the merits and we affirm the trial court's grant of JNOV in favor of Wasinger Parham.

_____
James M. Dowd, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.

---

[4] We note that in *Coin Acceptors, Inc. v. Haverstock, Garrett, & Roberts LLP*, 405 S.W.3d 19, 27 (Mo. App. E.D. 2013), the Court held that a judgment in the underlying suit against the plaintiff-client is not the only method of ascertainment.  In that case, this Court held that client's damage was capable of ascertainment when a federal court held that they infringed a competitor's patent.  *Id.*  In contrast, here, there were no facts until the 2017 judgment that suggest Briscoe committed legal malpractice.